## LOW KING YONG v. PAN AMERICAN AIRWAYS, Inc.

Civ. No. 826.

District Court, D. Hawaii.
Dec. 12, 1947.

W. Y. Char, of Honolulu, T. H., for petitioner.

Garner Anthony, of Honolulu, T. H. (Robertson, Castle & Anthony, of Honolulu, T. H., of counsel), for respondent.

J. FRANK McLAUGHLIN, District Judge.

This is a suit to cancel an appearance bond given by the petitioner to the defendant and for injunctive relief. It is a removed case, 28 U.S.C.A. § 71, involving an issue claimed to arise under the Immigration laws, 28 U.S.C.A. § 41(22). A motion to remand, 28 U.S.C.A. § 80, having been denied, the matter came on for hearing Dec. 8. The petitioner elected not to press at the outset his prayer for a preliminary injunction, and accordingly the case was heard upon its merits.

The only evidence tendered by either party was the testimony of Mr. L. H. Haus, officer in charge of the Honolulu Immigration Station, presented by the petitioner.

Mr. Haus testified that:

(a) Petitioner arrived at the port of Honolulu Oct. 3 from China aboard a Pan American plane.

(b) His claim of right to re-enter the United States as a returning citizen was deemed doubtful by an inspector, and petitioner was held for hearing before a Board of Special Inquiry.

(c) On Oct. 14 the Board after the hearing denied petitioner's right to re-enter the United States as a citizen, and petitioner thereafter appealed to the Commissioner, before whom his case is now pending.

(d) Between Oct. 3 and 14 petitioner was detained at the Honolulu Immigration Station.

(e) Having a home, a family, and a business in Hilo, Hawaii, petitioner sought to be released on bond. The officer in charge inquired by radiogram of the director of the district in San Francisco whether or not he could release the petitioner on bond (Exhibit "A"). The district director replied (Exhibit "B") that petitioner should be returned to Pan American and that it could bond petitioner or take such other action as it might elect.

(f) On Oct. 14 at the Immigration Station, Mr. Haus turned petitioner over to a Pan American official for detention pending the outcome of petitioner's appeal. Thereupon petitioner with the aid of his attorney tendered the Pan American official a prepared and duly executed commercial appearance bond (Exhibit "A" of petition), which Pan American accepted and released petitioner, who then left the Station with his attorney. At no time with reference to the bond did anyone threaten, coerce, compel or in any way force petitioner to post bond with the respondent.

When questioned as to the Immigration Service's authority to release a person on bond or otherwise in an exclusion case, Mr. Haus informed the Court that pursuant to the administrative practice and operational instructions of his Service in an exclusion case the officer in charge of a station may for humanitarian and certain other reasons release a detained person (1) upon his own recognizance, (2) upon parole, and (3) upon bond if authorized by the Attorney General.

Such being the evidence, and all of it, the respondent moved to dismiss. The motion was denied, for despite the lack of a basis for an injunction a question of law remained.

Petitioner having asked for permission to be released on bond and it being accomplished, the Court inquired of petitioner's counsel during argument why petitioner did not leave well enough alone since if the bond were canceled petitioner would be detained physically by Pan American or the Immigration officials. The reply was novel, and it is mentioned for, dubious as it is in view of the express wording of 8 U.S.C.A. § 151, it nevertheless makes sense out of this case. The answer was that if the bond is canceled it would place petitioner inside the United States and then the United States, rather than the petitioner as is now the case, would have the burden of proving he is not a citizen of the United States or alien entitled to remain in this country.

■ The Court is satisfied that 8 U.S.C.A. § 151 should be interpreted in the light of modern transportation facilities and that therefore the words "vessels or transportation lines" should be construed sensibly to include an air carrier such as the respondent here. See Pan American Airways v. United States, 5 Cir., 1943, 135 F.2d 51, at page 52; 50 Am.Jur. "Statutes" § 237; Immigration Regulations 116.52, "Civil Air Navigation", 8 U.S.C.A. § 222.

There seems to be a total lack of specific authority in both the statutes and the Immigration regulations to support affirmatively the Immigration Service's custom and practice in deserving exclusion cases of releasing a detainee pending the determination of either his Board hearing or his appeal to the Commissioner, or both. From this the petitioner argues that the Immigration Service could not lawfully release the petitioner on bond, and therefore the respondent had no greater authority and the bond in question is unjustified and should be canceled.

■ True, the Service's operational practice is not affirmatively supported by any statute or regulation. Nor, on the

other hand, is there any prohibition against the practice. Dealing as the Service does with human beings, so long as the rights of the Government are protected I can find no legal fault with its sensible custom of releasing temporarily persons held for examination and determination as to their right to enter the United States for humanitarian reasons in meritorious cases. The Government is fully protected by extending its long arm if the detainee breaks faith, and while in the status of a detainee, whether in actual custody or at liberty conditionally, his position remains as one not legally in the United States but as one still outside knocking at the entry door, 8 U.S.C.A. § 151.

■ But the question here is as to the carrier's right to release on bond to itself a detainee remanded to its custody by the Immigration officials. Under the provisions of 8 U.S.C.A. § 151, the Immigration officials can, as they did here because of the lack of adequate Government detention facilities, by placing the detainee in the carrier's custody impose on it both the duty of safe-keeping the person and the duty of maintaining him at its expense. There has been a suggestion that in having these duties cast upon it the carrier is an agent of the Government and can exercise the Government's power to release the person on bond. This suggestion does not ring true, first because the bond does not run to the Government and further because the respondent is in these circumstances solely and independently responsible for the person, thus there could be no agency relationship.

Contrary to my initial impression of this case, it seems to me that the issue of the legality of the respondent's release of the petitioner on bond to itself is purely a private matter of contract law as between the parties and in no way involves the United States or its laws. There is no Federal law applicable to these facts which states that a carrier may or may not release a detainee remanded to its custody on bond or otherwise. True the San Francisco director of the Immigration district advised the respondent here that it could, but such does not for that reason state a case arising under the Immigration laws.

■ The test of removability is the determination of whether the suit could have been brought originally in a Federal district court. The question is, therefore, one of jurisdiction, the existence of which must clearly appear from the complaint and be free from doubt. Sabin v. H. O. L. C., 10 Cir., 1945, 147 F.2d 653; and T. V. A. v. Tennessee Electric Power Co., 6 Cir., 1937, 90 F.2d 885.

■ The test of whether a suit arises under the Immigration laws, 28 U.S.C.A. § 41(22) would seem to be the same test as is applicable to a suit claimed to arise "under the Constitution or laws of the United States," 28 U.S.C.A. § 41(1). The test factors in this respect are stated by the court in Regents of New Mexico v. Albuquerque Broadcasting Co., 10 Cir., 1947, 158 F.2d 900, at page 907, with cases there cited, to be that in order to bring a case within the statute: "(1) a right or immunity created by the Constitution or laws of the United States must be an essential element of the plaintiff's cause of action; (2) the right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction and effect and defeated if they are given another; (3) a genuine and present controversy, not merely a possible or conjectural one, must exist with reference thereto; and (4) the controversy must be disclosed from the face of the complaint unaided by the answer."

■ As this removed case has developed —the question of jurisdiction being always open and noticeable by the Court itself— the answer to this issue, as I now see it, is certainly not free from doubt and appears in no way to involve directly a claimed right or immunity under the Immigration laws of the United States. This Court, therefore, lacks jurisdiction to determine the issue.

The oral ruling previously made denying petitioner's motion to remand is set aside, that motion is granted, and the case remanded to the territorial First Circuit Court.

A remanding order may be settled upon notice.